AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| Bahanni Mosiah HAYWOOD | ) Case No. |
| | ) 6:19-mj- 1885 |
| | ) |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 14, 2019__ in the county of __Orange__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC § 841(a)(1) and (b)(1)(B) | Possession with the intent to distribute a controlled substance. |

This criminal complaint is based on these facts:

See affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Guillermo Dobao, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __12/16/2019__

_____
Judge's signature

City and state: __Orlando, Florida__

Hon. Leslie R. Hoffman
*Printed name and title*

**STATE OF FLORIDA**

**COUNTY OF ORANGE**

CASE NO. 6:19-mj- 1885

## AFFIDAVIT IN SUPPORT OF THE ISSUANCE OF A CRIMINAL COMPLAINT

I, Guillermo Dobao, having been duly sworn, hereby make the following statement in support of the attached criminal complaint:

1. I am a Special Agent ("SA") with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI), and have been since December 3, 2010. I am currently assigned to the HSI Assistant Special Agent in Charge Office in Orlando, Florida. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code.

2. The information set forth in this affidavit is based on my own personal knowledge, information supplied to me by other law enforcement officers and agents, and information contained within various government databases and records. Because this affidavit is submitted for the limited purpose of establishing probable cause to support the issuance of a criminal complaint, I have not included details of all aspects of my investigation. Rather, I have set forth only those facts I believe are necessary to establish probable cause that a violation of federal law has been committed.

3. On December 14, 2019, Bahanni Mosiah HAYWOOD was a passenger on JetBlue flight 1722, which departed from Sangster International Airport in Montego Bay, Jamaica and arrived at the Orlando International Airport in Orlando, Florida. At approximately 3:35 pm, HAYWOOD arrived at the Federal Inspection Site of the Orlando International Airport. HAYWOOD was met by an U.S. Customs and Border Protection officer (CBPO) Velez. CBPO Velez conducted a primary inspection of HAYWOOD. While conducting database checks, CBPO Velez received a positive alert for HAYWOOD—meaning HAYWOOD's name and number were associated with an individual who had already been arrested for drug trafficking. CBPO proceeded to refer HAYWOOD to a secondary inspection.

4. HAYWOOD was greeted by CBPO George Rivera for a secondary inspection. CBPO Rivera proceeded to question HAYWOOD about his visit to Jamaica. HAYWOOD stated he was stranded in Jamaica without a place to stay. As CBPO Rivera continued with his questioning, CBPO J. Martinez noticed HAYWOOD was stuttering his words and sweating from his forehead as he placed his luggage on the X-ray machine. CBPO Rivera reviewed the X-ray and noticed darker spots within several of the shoes insoles, suggesting that the insoles contained items. A total of seven pairs of shoes were X-rayed. Of the seven pairs, five pairs of shoes had anomalies—meaning the appearance of dark spots or the presence of items in the insoles.

5. CBPO Rivera then proceeded to empty the contents of HAYWOOD's luggage. CBPO J. Martinez began to further inspect the shoes and noticed the shoes

felt heavy and the shoes were stuffed with socks. Upon removing the insoles of the shoes, CBPO Martinez noticed white stitching inside the shoes. CBPO Martinez also noticed the shoes were covered with what appeared to be clay. CBPO Fonseca probed one of the shoes and extracted a white powder substance. CBPO Fonseca, CBPO Almodovar, CBPO Martinez, and CBPO Valderrama proceeded to dismantle the shoes. Officers recovered a total of ten plastic wrapped bundles of a white powder substance between the insole and outsole of the shoes. All ten bundles were field tested, and all tested positive for the presence of cocaine hydrochloride. The total weight was approximately 1.174 kilograms. Based on the findings, HAYWOOD was placed in hand restraints and detained.

6. I, along with another member of law enforcement, advised HAYWOOD of his *Miranda* Rights, which he waived. When asked about his visit to Jamaica, HAYWOOD stated he was vacationing and later "stranded" in Jamaica. HAYWOOD stated upon arriving in Jamaica, authorities in Jamaica took his money. When asked how much money he was traveling with, HAYWOOD stated $7,500.00. When asked why the money was taken, HAYWOOD stated Jamaican authorities hold money in excess of one million Jamaican dollars. I asked HAYWOOD why he chose to stay in Jamaica and not board a plane back to the United States. HAYWOOD stated Jamaican authorities forced him to stay.

7. HAYWOOD then added how he rode a bus from Montego to Kingston and spent most of his time in Jamaica living in a car. When asked who he was staying with, HAYWOOD would not answer. I then informed HAYWOOD of

contraband being found inside his luggage. HAYWOOD put his face down and covered himself with a blanket and sighed. I then asked HAYWOOD if he knew why he had been detained. HAYWOOD remained quiet while letting out a long exhale. HAYWOOD then looked up and uttered unintelligible words. I then told HAYWOOD cocaine was found inside his luggage. HAYWOOD stared at me and remained quiet.

8. HSI Special Agent Nestor Perez then entered the interview room and addressed HAYWOOD. SA Perez began to speak with HAYWOOD and asked him to reflect on his actions and how he could help himself. In the course of their conversation, HAYWOOD uttered "I fucked up!" SA Perez then asked HAYWOOD if he was a criminal or someone who made a mistake. HAYWOOD stated, "I made a mistake!"

9. Based on the foregoing, I believe that there is probable cause to believe that Bahanni Mosiah HAYWOOD possessed with intent to distribute a controlled substance, in violation of 21 U.S.C. 8419(a)(2) and 841(b)(1)(B). Therefore, I respectfully request that the Court issue the attached criminal complaint charging

Mosiah HAYWOOD with the aforementioned federal offense.

_____
Special Agent Guillermo Dobao
Homeland Security Investigations

Subscribed and sworn to before me on this
16th day of December, 2019.

_____
LESLIE R. HOFFMAN
United States Magistrate Judge